**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**UNITED STATES POSTAL SERVICE,**

       **Plaintiff,**

v.                                  **Case No. 8:10-cv-1682-T-27TBM**

**POST OFFICE ASSOCIATES, L.L.L.P.,**

       **Defendant.**

_____/

**<u>REPORT AND RECOMMENDATION</u>**

THIS MATTER is before the court on referral for a Report and Recommendation on **Plaintiff's Motion for Judgment on the Pleadings** (Doc. 19) and Defendant's Opposition to Plaintiff's Motion for Judgment on the Pleadings (Doc. 25).  By its motion, brought pursuant to Fed. R. Civ. P. 12( c), the United States Postal Service, seeks an order granting judgment in its favor as a matter of law on its claim for breach of contract together with judgment on each count of Post Office Associates, L.L.L.P.'s Counterclaim and an order requiring Defendant to specifically perform under the terms of the lease purchase option.  Because the pleadings raise disputed issues of material fact, I recommend Plaintiff's motion for judgment on the pleadings be denied.

I.

A.

In March 1965, Plaintiff, United States Postal Service ("Postal Service" or "Plaintiff"), entered into a long-term written lease on property in Sarasota County, Florida, to

operate a post office.  The property is now owned by Defendant, Post Office Associates, L.L.L.P. ("POA" or "Defendant").  (Doc. 1, ¶¶ 6-8).  The Lease provided an original twenty-year term running from January 1, 1965, until December 31, 1984, and six renewal options for a period of five years each.  *Id.*, ¶ 9.  Paragraph 16 of the Lease contained a purchase option ("Lease Purchase Option") whereby the Government could purchase in fee simple the leased premises and land at certain "respective times and prices."  *Id.*, ¶¶ 10-11.  In pertinent part, the Lease Purchase Option provided as follows:

> 16. The Government shall have the option to purchase the fee simple title to the leased premises, including the underlying land, at the following respective times and prices:
> . . .
>
> (6) At end of fifth 5-year renewal option term. . . . . . . . $825,000.00

(Doc. 1-1 at 20).  The end of the fifth 5-year renewal period was December 31, 2009.  (Doc. 1, ¶ 11.).

On August 3, 1981, the Plaintiff entered into a Lease Amendment with the then owner of the property, Sarasota Properties Co.  The Lease Amendment (otherwise the "Amendment") included a second purchase option ("Second Purchase Option") under which the subject real property could be purchased by Plaintiff at any time for its fair market value. (Doc. 1-1 at 78-83).  In pertinent part, the Second Purchase Option states:

> 6. By execution of this amendment, the lessor hereby grants the Postal Service an option to purchase the fee simple title to the leased premises at any time during the remaining terms of this lease, including the term of any lease renewal options subsequently exercised, by providing written notice of the exercise of the option to purchase to the lessor. The purchase price will be at the fair market value of the premises at the date of the exercise of the option, unencumbered by the Postal Service

lease, as determined by Postal Service appraisal.  If the lessor disagrees with the Postal Service appraisal, the lessor shall have a period of one hundred twenty (120) days to obtain an appraisal at the lessor's expense. . . .

. . .

8. This option is in addition to any other purchase options available under the lease of this property. . . .

*Id.* at 78-79.

On November 28, 2008, Plaintiff, through an authorized contracting official, advised Defendant in writing of its intent to purchase the subject property in accordance with the Lease Purchase Option contained in paragraph 16 of the Lease at the expiration of the fifth lease renewal period.  (Doc. 1, ¶ 17).  Plaintiff submits it was ready and able to pay the $825,000.00 purchase price on the closing date, December 31, 2009, but Defendant refused on multiple occasions to arrange a closing date and has otherwise indicated its refusal to sell the property.  *Id.*, ¶¶ 22-23.

Plaintiff sues Defendant for breach of contract for failing to comply with the terms of the Lease Purchase Option.  Because the subject matter is real property, Plaintiff alleges that damages are inadequate to compensate Plaintiff and it demands specific performance by Defendant of its obligations under the Lease Purchase Option.  *Id.,* ¶ 24.

In answer to Plaintiff's Complaint, Defendant admits to the existence and authenticity of the Lease and Lease Amendment but denies that Plaintiff is entitled to any of the remedies it seeks.  (Doc. 14).  As discussed below, it asserts a number of affirmative defenses.  By its Counterclaim, it asserts a claim for reformation by reason of mutual mistake, and claims for payment of rents for the Plaintiff's holdover tenancy and the "taking" of this

3

property.  *Id.* at 14-17.  In the latter regards, Defendant alleges that Plaintiff not only failed to

properly exercise the purchase option for the subject property, but it also failed to exercise the

option for a sixth extension of the lease such that the lease has now expired.  *Id.* at 12-13.

Nonetheless, the Plaintiff continues to occupy the premises and as a consequence, Defendant

claims rent for the holdover occupancy or just compensation for the Plaintiff's taking of the

property.  *Id.* at 16-17.  As for the claim of mutual mistake and reformation, Defendant

contends that the Second Purchase Option was to be in lieu and in place of any other purchase

options originally available in the Lease, and any language in the Lease Amendment to the

contrary was the result of a mutual mistake concerning the terms of the Lease Amendment.

*Id.* at 11.  It seeks a reformation of the Lease Amendment to provide that the purchase option

contained therein supersedes and is in lieu of the purchase option at paragraph 16 of the Lease

and that the  purchase option therein is null and void, and declarations that Plaintiff's rights to

purchase the property or renew the lease have expired, and that Defendant has no obligation to

sell the property to Plaintiff.  *Id.* at 14.[1]

---

[1]Specifically, the Counterclaim alleges that Joseph Penner, a real estate investor
knowledgeable in postal service leasing practices, acquired the subject property in September
1971.  *Id.* at 9.  In December 1975, Penner conveyed the property to Sarasota Properties
Company (SPC) which was controlled by Sol Finkelman, a business associate of Mr. Penner
who had previously been involved in numerous real estate transactions involving leased postal
facilities.  *Id.* at 10.  Mr. Finkelman consulted with Penner concerning administration of the
Lease due to Penner's extensive knowledge and expertise in postal leasing and real estate
matters.  *Id.*  In 1981, the Postal Service contacted SPC about the Lease Amendment whereby
the Postal Service would assume responsibility for certain maintenance obligations in return
for a reduction in rental payments.  *Id.*  Finkelman consulted with Penner regarding the
proposed Lease Amendment, and Penner, on behalf of SPC, participated in discussions and
negotiations with Postal Service real estate officials concerning the Lease Amendment.  *Id.* at
10-11.  In the context of those discussions, the Postal Service inquired about an option to
purchase the subject Property based upon its fair market value as determined by appraisals.

B.

By its motion for judgment on the pleadings, Plaintiff urges that under the Lease and Amendment thereto, the Postal Service had the right to purchase the leased premises for $825,000 and Defendant has wrongly refused to sell the property according to those terms in breach of the contract.  It urges that the terms of the Lease and Amendment are clear and unambiguous and permit it to exercise the purchase option under either the terms of the original Lease Purchase Option or the Second Purchase Option in the Amendment. Specifically, Plaintiff points to the language contained in the Amendment which provides in pertinent part, "[t]his option is in addition to any other purchase options available under the lease of this property."  In legal support it cites *United States v. Johnson*, 43 F.3d 1308 (9th

_____

*Id.* at 11.  Defendant alleges, "[i]n the course of the negotiations on SPC's behalf with [the Postal Service], it was specifically negotiated and agreed that the option to purchase the Property that was to be granted to the Postal Service pursuant to the Lease Amendment Program was to be in lieu and in place of any other options to purchase in favor of the lessee, including but not limited to the Purchase Option provided in the original Lease."  *Id.* Thereafter, the Postal Service forwarded to SPC for execution the Lease Amendment "which should have but failed to reflect the actual agreement that was reached with [the Postal Service] on SPC's behalf.  On information and belief, SPC executed the Lease Amendment on July 25, 1981, without making any modifications thereto and without knowledge that it failed to incorporate the parties' negotiations and agreement with respect to the purchase option provisions."  *Id.*  In December 1985, SPC conveyed the property to Penner and his wife who subsequently transferred title to a trust.  *Id.*  Defendant acquired the Property from the trust in or about 1987.  *Id.* at 12.

Defendant's claim for reformation further alleges that "[t]here was a mutual mistake concerning the terms of the written Lease Amendment, that departed from the parties' actual agreement and understanding that the option to purchase contained in the lease Amendment would supercede and be in lieu of and in place of all previously granted options to purchase the Property in favor of Plaintiff."  *Id.* at 14, ¶ 28.  Defendant further alleges that both Plaintiff and Defendant intended at the time the Lease Amendment was negotiated that the option to purchase contained in the Amendment would supercede all previously granted purchase options and that any prior purchase options would be null and void and of no effect.  *Id.* at 14, ¶ 29.

Cir. 1994), where the court, in somewhat similar circumstances, found this same language to be clear and unambiguous.  "[T]he plain meaning of this language is that the purchase option in the 1981 lease amendment did not supercede the original purchase option in the 1967 lease, but, rather, was an *additional* option available to the government." *Id.* at 1310 (emphasis in original).  As Plaintiff's argument goes, because the language of the Second Purchase Option is unambiguous and, by its plain terms, a mere addition to options already provided for in the Lease, Defendant breached the contract by not honoring Plaintiff's purchase offer at the expiration of the fifth lease renewal period when Plaintiff properly gave written notice of its intention to avail itself of that purchase option.

Plaintiff also challenges Defendant's allegations raised in the Counterclaim regarding an oral agreement made by an unidentified postal official which expressly contradicts the written terms of the executed Amendment.  Plaintiff urges that evidence of such an agreement is barred under the parol evidence rule because the Amendment is clear and unambiguous. Plaintiff further argues that Defendant fails to meet the heightened pleading standards applicable to a claim for reformation based upon mutual mistake and that the claim should be dismissed as implausible.  Since Defendant's claim for reformation fails, Plaintiff urges the claims for holdover tenancy and a Fifth Amendment taking must similarly fail.  It also urges that the claim for reformation is barred by the doctrine of laches.

Defendant responds that its Answer, Affirmative Defenses, and Counterclaim have adequately raised disputed issues such that same cannot be decided on this motion.  (Doc. 25). As noted above, Defendant alleges a number of affirmative defenses in bar of Plaintiff's

claims including the availability of an adequate legal remedy, waiver, estoppel, laches, unclean hands, intentional or negligent misrepresentation, that the Postal Service's actions were ultra vires and the Postal Service's representatives exceeded the limits of their authority in exercising the option, and a mutual mistake occurred in the integration or drafting of the Lease Amendment. *See* (Doc. 14 at 6-7). Particularly, it argues that it has pleaded mutual mistake and reformation with adequate particularity as required by Federal Rule of Civil Procedure 9(b) and that its allegations satisfy the plausibility requirements of Rule 8(a)(2). (Doc. 25 at 7-12). It further contends that Plaintiff is not entitled to judgment on its pleadings based upon the affirmative defense of laches. *Id.* at 13-14. Defendant submits that the parties should be permitted to conduct discovery on the disputed factual issues raised by its affirmative defenses and counterclaim. Additionally, Defendant urges that Plaintiff has failed to demonstrate that it does not otherwise have an adequate remedy at law such that specific performance would be required. *Id.* at 5. To the extent that the court would be inclined to grant Plaintiff's motion, Defendant alternatively requests it be permitted the opportunity to amend its answer, affirmative defenses, and counterclaim pursuant to Rule 15(a)(2).

## II.

### A.

Under Rule 12(c), a party may move for a judgment on the pleadings after the pleadings are closed.[2] Fed. R. Civ. P. 12(c). Entry of judgment on the pleadings "is

---

[2] Pleadings are considered "closed" when the defendant has answered the complaint. *See Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 n.8 (11th Cir. 2002); *Hill v. Gaylord Entm't*, No. 07-60745-CIV, 2008 WL 783756, at *1 n.2 (S.D. Fla. Mar. 20, 2008). Here, Plaintiff filed its Complaint on July 29, 2010. (Doc. 1). Defendant filed its Answer and Counterclaim on October 12, 2010, (Doc. 14) and Plaintiff

appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts."[3]  *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002) (citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)).  In reviewing a motion for judgment on the pleadings, the court must accept all facts in the complaint as true and view them in the light most favorable to the nonmoving party.  *Hardy v. Regions Mortg., Inc.*, 449 F.3d 1357, 1359 (11th Cir. 2006) (quoting *Moore v. Liberty Nat'l Life Ins. Co.*, 267 F.3d 1209, 1213 (11th Cir. 2001)).  A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009).  A complaint does not state a facially plausible claim for relief if it shows only "a sheer possibility that the defendant acted unlawfully."  *Id.*  In evaluating the sufficiency of a plaintiff's pleadings, the court must make reasonable inferences in Plaintiff's favor, "but we are not required to draw plaintiff's inference."  *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005).  Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations.  *Id.*; *see also Iqbal*, __ U.S. __, 129 S. Ct. at 1951 (stating conclusory allegations are "not entitled to be assumed true").

---

filed its Answer and Affirmative Defenses to the Counterclaim on December 13, 2010 (Doc. 18).  Thus, the pleadings are closed for the purposes of Fed. R. Civ. P. 12(c).

   [3]Attachments to the pleadings may be considered under Rule 12(c) if the documents are central to the plaintiff's claim and undisputed.  *Horsley v. Feldt*, 304 F.3d 1125, 1134-35 (11th Cir. 2002).

B.

Interpretation of the Postal Lease and Amendment here is governed by federal law.

*See, e.g., Begner v. United States*, 428 F.3d 998, 1004 (11th Cir. 2005) (noting that "[f]ederal

courts use federal common law to evaluate government contracts"); *Forman v. United States,*

767 F.2d 875, 879-80 (Fed. Cir. 1985) (applying federal law to postal lease entered between

Post Office Department and private lessor); *Kelley v. United States*, 19 Cl. Ct. 155, 162 (1989)

(treating postal lease and lease modification as a subject for general federal contract law); *see*

*also Modeer v. United States*, 68 Fed. Cl. 131, 142 (2005) (federal law normally governs

interpretation of a lease when the United States is the lessee)*; Prudential Ins. Co. of Am. v.*

*United States*, 801 F.2d 1295, 1298 (Fed. Cir. 1986) (explaining that it is "well settled that

contracts to which the government is a party . . . are normally governed by federal law, not by

the law of the state where they are made or performed"); *Ginsberg v. Austin*, 968 F.2d 1198,

1200 (Fed. Cir. 1992) (holding that when "federal law does not answer the issue, we look to

general property and contract law principles as they are embodied in state law

pronouncements").  As federal law does answer the issues raised by the pleadings here, *i.e.,*

breach of contract, reformation and parol evidence, I have applied federal common law.[4]

---

[4]It is worth noting that the law is not completely settled on the application of federal versus state law in evaluating real estate contracts with the government.  *See Powers v. United States Postal Service*, 671 F.2d 1041, 1043-45 (7th Cir. 1982) (applying state law, rather than federal common law, in deciding dispute between United States Postal Service, as tenant, and a private landlord concerning the landlord's right to terminate the lease for nonpayment of rent, noting "a federal common law of landlord tenant does not exist"); *see also U.S. Postal Serv. v. Amer. Postal Workers Union*, No. 07-21682-CIV, 2008 WL 4666202, *3 (S.D. Fla. Oct. 21, 2008), *aff'd* 367 Fed. Appx. 971 (11th Cir. 2010) (applying Florida law to action by Post Office to eject operator of daycare center); *Reed v. U.S. Postal Serv.*, 660 F. Supp. 178, 181 (D. Mass. 1987) (applying state law to postal lease).

III.

To establish its claim for breach of contract under federal common law, Plaintiff must "allege and establish: (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by the breach." *Pryor v. United States*, 85 Fed. Cl. 97, 104 (2008) (quoting *San Carlos Irrigation & Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989)).

Defendant's counterclaim asserts three causes of action–reformation based on mutual mistake, holdover tenancy, and Fifth Amendment taking.  The viability of Defendant's second and third counts turn on whether Defendant has adequately stated its claim for reformation. And, if Defendant is able to state a claim for reformation based on mutual mistake, Plaintiff's motion for judgment on the pleadings must necessarily fail on this motion.  "A party seeking to state a claim for reformation of a contract under the doctrine of mutual mistake must allege four elements: (1) the parties to the contract were mistaken in their belief regarding a fact; (2) that mistaken belief constituted a basic assumption underlying the contract; (3) the mistake had a material effect on the bargain; and (4)  the contract did not put the risk of the mistake on the party seeking reformation." *Atlas Corp. v. United States*, 895 F.2d 745, 750 (Fed. Cir. 1990) (citing Restatement (Second) of Contracts §§ 151-152, 155 (1981); *Gould, Inc. v. United States*, 19 Cl. Ct. 257, 268 (1990); *Nat'l Presto Indus., Inc. v. United States*, 338 F.2d 99, 107-09, 167 Ct. Cl. 749 (1964), *cert. denied*, 380 U.S. 962 (1965)).

In the circumstances of this case, I find it appropriate to first address Defendant's claim of mutual mistake and its reformation claim, and particularly, whether Defendant may

10

rely on the purported evidence of oral negotiations between the Postal Service and Mr. Penner to establish an understanding of the parties which is contrary to the express language of the Amendment.  In the usual course, a court may consider parol evidence to explain or clarify an ambiguity in a contract.  However, "where the essential terms of a contract are unambiguous the court 'will not look beyond the four corners of the document to determine the parties' intent.'"  *Ellinger v. United States*, 470 F.3d 1325, 1338 (11th Cir. 2006) (citations omitted).  By my consideration, the Second Purchase Option of the Amendment is unambiguous and, as noted by Plaintiff, at least one other court reviewing the same contract language has concluded as much.  *See United States v. Johnson*, 43 F.3d 1308 (9th Cir. 1994).[5]  Notwithstanding this, federal courts have recognized that parol evidence is admissible to prove a mutual mistake by a party seeking reformation of a contract.  *Travelers Indem. Co. v. Calvert Fire Ins. Co.*, 798 F.2d 826, 835 (5th Cir. 1986); *see also Nat'l Austl. Bank v. U.S.*, 452 F.3d 1321, 1330 (Fed. Cir. 2006).  Thus, Defendant's allegations as to conversations and negotiations between Mr. Penner and Postal Service real estate officials are properly considered on this motion.[6]

---

[5]While the *Johnson* case may provide some guidance with regard to the language of the purchase option, the case is procedurally different from the instant matter in that the case was decided on summary judgment and it does not appear that reformation was raised as an issue.

[6]Plaintiff argues that this verbal agreement with an unidentified postal official occurring over thirty years ago should not be considered.  In light of the discussions below and given that the court is to accept the facts as true and in favor of the non-moving party when considering a motion for judgment on the pleadings, I find the Plaintiff's argument in this regard is better left for proceedings at the motion for summary judgment stage after discovery.  I do note that while Defendant's allegations may be sufficient to create a disputed issue of fact so as to survive the instant motion for judgment, a party seeking reformation has the burden of establishing "each of the four elements by 'clear and convincing evidence' because 'reformation of a written agreement on the ground of mutual mistake is an

As for whether the Defendant has adequately pled mutual mistake and its reformation claim in accordance with Rules 8(a) and 9(b) of the Federal Rules of Civil Procedure, Defendant is correct that Rule 8 merely requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). And, a complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* ___ U.S. ___, 129 S. Ct. at 1949. Fed. R. Civ. P. Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). However, "Rule 9(b) must be read in conjunction with Rule 8(a), . . . [and] Rule 9(b) may be satisfied if the complaint sets forth: (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud [or mistake]." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir.1997) (internal citations omitted).

By my review of the allegations of mutual mistake and the counterclaim for reformation, Defendant has alleged sufficient details of the statements made between Mr. Penner and a postal official negotiating the Amendment in 1981 to satisfy Rule 9(b) and to alert the Postal Service of the claim for mutual mistake. Thus, Defendant alleges that in

---

extraordinary remedy.'" *Dick Pacific/GHEMM v. United States*, 87 Fed. Cl. 113, 123 (2009) (quoting *Nat'l Austl. Bank*, 452 F.3d at 1329).

conjunction with the Amendment, there was a specific agreement with the Postal Service, after negotiations, such that the Second Purchase Option contained in the Amendment would be in lieu of and in place of all prior purchase options and that the failure to include that agreement in the Amendment was a function of a mutual mistake that departed from the parties' actual agreement and understanding.  While the identity of the contracting official for the Postal Service who purportedly agreed to this is not specifically pled, it would appear that such is within Plaintiff's knowledge and/or ability to determine.[7]

By my consideration, this conclusion necessarily dictates that Plaintiff's claim for judgment on the pleadings be denied due to the factual disputes inherent in such a claim. Notwithstanding this, I am obliged to conclude that Defendant's allegations for reformation fall short of the requirements of Rule 8 and applicable case law.  Thus, while the motion for judgment is premature, for the reasons which follow, Defendant should be required to replead its counterclaim.

As stated above, federal law applies to this contract dispute.[8]  While Defendant's allegations set forth sufficient facts to address the first and second elements of such a claim, the allegations do not specifically address the remaining elements - whether the mistake had a

---

[7]The Lease Amendment is signed by the "Manager Real Estate Branch," a person surely known to the Postal Service.  *See* (Doc. 1-1 at 79).

[8]It appears that Defendant has pled its claim for reformation under Florida law rather than federal law.  Under Florida law, Defendant's allegations are adequate to state a cause of action for reformation.  *See, e.g., Goodall v. Whispering Woods Center, L.L.C.*, 990 So. 2d 695, 699 (Fla. Dist. Ct. App. 2008) (allegations that a failure to include an agreed upon term in a contract was the result of a mutual mistake and not expressive of the parties' true intent is sufficient to state a cause of action for reformation based on mutual mistake).

material effect on the bargain and the matter of risk in the case of a mistake.  *See Atlas Corp.*, 895 F.2d at 750.  The third *Atlas* element requires that the mistake have a material effect on the bargain, and while Defendant alleges that the Second Purchase Option contained in the Amendment was "specifically negotiated and agreed" such that it would be in lieu of all other purchase options, the incentive for the Amendment appears to be an effort by the Postal Service to reduce its rent payments by assuming certain maintenance obligations.  (Doc. 14 at 10).  Given the parties' cross claims, it is perhaps appropriate to infer the materiality of the Second Purchase Option, however I find such should be expressly addressed.  However, as to the fourth element regarding the allocation of risk, the Counterclaim is silent.  "[A] mutual mistake as to a fact . . ., even a material one, will not support relief if the contract puts the risk of such a mistake on the party asking reformation[.]"  *Dairyland Power Co-op. v. United States*, 27 Fed. Cl. 805, 813 (1993) (quoting *Flippin Materials Co. v. United States*, 160 Ct. Cl. 357, 312 F.2d 408, 415 (1963)).  By my consideration, while the pleadings are adequate to put Plaintiff on notice of the claim of mutual mistake and for reformation, the pleadings are deficient and should be amended to establish that the claim is plausible.  And, because it appears possible that Defendant can state a cause of action for reformation under federal law and in light of the liberal rules allowing amendments pursuant to Fed. R. Civ. P. 15, Defendant's alternative request for permission to amend its claim for reformation should be granted.[9]

---

[9]Rule 15 of the Federal Rules of Civil Procedure provides that the court should "freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The district court has the discretion to grant or deny a motion to amend a pleading pursuant to Rule 15(a).

IV.

In conclusion, given the allegations of mutual mistake and the factual disputes inherent in such claim, the motion for judgment on the pleadings fails. *See Horsley*, 292 F.3d at 700 ("judgment on the pleadings under Rule 12(c) is appropriate when there are no material facts in dispute").[10]   However, Defendant's Counterclaim for reformation, as currently pled, is deficient under federal law and should be amended.  Accordingly, on these pleadings, I recommend that Plaintiff's Motion for Judgment on the Pleadings (Doc. 19) be **denied** and

---

*Foman v. Davis*, 371 U.S. 178 (1962); *McKinley v. Kaplan*, 177 F.3d 1253, 1258 (11th Cir. 1999).  "In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be 'freely given.'"  *Foman*, 371 U.S. at 182.  There is no evidence here of undue delay, bad faith or dilatory motive on the part of the Defendant in seeking to amend.  And, given that federal law recognizes the ability of a party seeking reformation to use parol evidence to establish a mutual mistake, I cannot conclude that allowance of the amendment would be futile.

[10]Denial of Plaintiff's motion appears appropriate as to Plaintiff's defense of laches as well.  "This doctrine is an affirmative defense which requires a party to prove: (1) a delay in a right or claim; (2) that the delay was not excusable; and (3) that the delay caused undue prejudice."  *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1517 (11th Cir. 1984).  The test for laches is flexible, requiring a careful examination of both the delay and the prejudice caused by that delay.  *Id.*  As noted by the Defendant, the pleadings do not necessarily demonstrate the delay and prejudice claimed by Plaintiff by its motion, and thus a determination on this defense is better left after some discovery on these issues has occurred.  *See, e.g., Kling v. Hallmark Cards, Inc.*, 225 F.3d 1030, 1041 (9th Cir. 2000) ("because a claim of laches depends on a close evaluation of all the particular facts in a case, it is seldom susceptible of resolution by summary judgment").

that Defendant be permitted fourteen (14) days in which to amend its claim for reformation in

accordance with federal law.[11]

Respectfully submitted on this
22nd day of April 2011.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations

contained in this report within fourteen (14) days from the date of its service shall bar an

aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a

district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R.

Civ. P. 6; M.D. Fla. R. 4.20.

Copies to:
Honorable James D. Whittemore, United States District Judge
Counsel of Record

---

[11]Assuming Defendant's amended pleading is adequate, a renewed motion to dismiss would likely serve no useful purpose given the analysis set forth above.  Thus, I would urge the parties to move forward with completing discovery so that the significant legal issues raised by the Postal Service may be addressed on a fully developed record.

16